# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * *

ORDER

* * * * * * * * * * * * * * * * * *

UnitedHealth Group Incorporated,

                Plaintiff,

vs.

John Doe a/k/a "dwight coppes,"

                Defendant.        Civ. No. 09-2274 (DWF/RLE)

* * * * * * * * * * * * * * * * * *

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Plaintiff's ex parte Motion for Expedited Discovery so as to determine the identity of the Defendant. See, Docket No. 2.

Since the Plaintiff is unable to serve its Complaint, or any notice of a Hearing, upon a Defendant whose identity, and address, are unknown, we consider the Motion on the Plaintiff's written submissions. Finding good cause for the Motion, we grant the same.

## II. Factual and Procedural History

In its Complaint, the Plaintiff alleges, in pertinent part, as follows:

> 17. On information and belief, Defendant, using the alias "dwight coppes," registered the domain name "healthcare-united.biz" on June 22, 2009. Also on information and belief, Defendant is using this alias to hide his identity from UnitedHealth. For example, Defendant lists a shopping mall in Quebec, Canada as his "address" in his domain name registration for "healthcare-united.biz."
>
> 18. On or about August 25, 2009, UnitedHealth learned that Defendant is using UnitedHealth's famous UNITED-HEALTHCARE trademark on the http://www.healthcare-united.biz Internet site to solicit bank account information and defraud consumers in violation of federal and state law. * * *
>
>       * * *
>
> 20. The http://www.healthcare-united.biz Internet site was hosted by Homestead Technologies, Inc. ("Homestead"). Upon learning of Defendant's activities, United-Heath immediately contacted Homestead and demanded that the site be disabled. Homestead agreed that the site violated its Terms of Service and has disabled the site. * * *
>
> 21. UnitedHealth is aware of at least one consumer who has been defrauded by Defendant through an electronic funds transfer, and has reason to believe that Defendant has defrauded others. Defendant quotes prices in, and accepts, United States dollars through its Internet site.

> \* \* \*
>
> 24. Defendant does not have UnitedHealth's permission to use the UNITEDHEALTH Marks or the Infringing Marks.

Complaint, Docket No. 1, at pp. 4 and 5 of 18 ¶¶17, 18, 20, 21, and 24.

The Plaintiff's Complaint alleges claims against the Defendant "for trademark infringement, dilution, and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. §§1051 et seq. ("Lanham Act"), and for trademark infringement, dilution, unfair competition, violations of the Minnesota Deceptive Trade Practice Act, unjust enrichment under the law of Minnesota and other states where the Defendant is conducting his illegal activities, and other claims specified" in the Complaint. Id. at pp. 1-2 of 18 ¶3.

Contemporaneous with the filing of its Complaint, the Plaintiff filed its Motion for Expedited Discovery, see, Docket No. 2, in which it "seeks an order of the Court authorizing Plaintiff to serve a subpoena duces tecum upon Homestead * * *, a website hosting service based in Menlo Park, California, Google, Inc. ("Google"), an electronic mail provider based in Mountain View, California, and Tucows, Inc. ("Tucows"), a domain name registrar with an office in King of Prussia, Pennsylvania." Id. at p. 1. According to the Plaintiff, "[t]he purposes of these subpoenas are to

identify and locate Defendant John Doe, and to determine what, if any, information Defendant Doe may have obtained from Plaintiff's customers in the activities which are the subject of the Complaint." Id.

The Plaintiff represents that it requested the informal cooperation of Homestead, but Homestead declined voluntary cooperation, in an email dated August 26, 2009, owing to the fact that Homestead's "privacy policy restricts the release of account information." Docket No. 3, at p. 6 of 6. Homestead did advise that it would "abide by any court order regarding the account." Id. With respect to Google, and Tucows, the Plaintiff has not requested informal compliance from them "because providers of such services typically require a subpoena or court order prior to production of account holder information." Docket No. 2, at p. 2 of 5. As a consequence, the Plaintiff now seeks to engage in discovery at an earlier time than normally allowed by Rule 26(d)(1), Federal Rules of Civil Procedure.[1]

---

[1] Rule 26(d)(1) reads as follows:

> A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

III. Discussion

Ordinarily, a party may not seek discovery from any source, including third parties, before the parties have conferred as required by Rule 26(f), Federal Rules of Civil Procedure. Of course, Rule 26(d)(1) expressly empowers a Court to authorize discovery before the conduct of a Rule 26(f) conference. The Courts within this Circuit, which have examined the issue of expedited discovery, have analyzed the question on the basis of a showing of "good cause." See, e.g., Monsanto Co. v. Woods, 250 F.R.D. 411, 413 (E.D. Mo. 2008); Wachovia Securities, L.L.C. v. Stanton, 571 F. Supp.2d 1014, 1049-50 (N.D. Iowa 2008). We find the good cause criterion appropriate and, in practical effect, have applied that standard in the past. Antioch Co. v. Scrapbook Borders, Inc., 210 F.R.D. 645, 651 (D. Minn. 2002).

Such expedited discovery has been permitted in order to determine the identity of an unknown Defendant. While our research uncovered only one such decision in this Circuit, see, UMG Recordings, Inc. v. Does 1-24, 2007 WL 4205768 at *1 (E.D. Mo., November 26, 2007), our survey of the relevant cases confirmed the assessment of one Court, that expedited "discovery to allow the identity of "Doe" defendants is 'routine.'" LaFace Records, LLC v. Does 1-5, 2007 WL 2867351 at *2 (W.D. Mich., September 27, 2007)[collecting cases]; Arista Records, LLC v. Does 1-12, 2008 WL

- 5 -

4133874 at *1 (E.D. Cal., September 4, 2008)("Courts have routinely found good cause exists to issue a Rule 45 subpoena in similar circumstances to those presented here.")[collecting cases].

As the Court explained, in <u>UMG Recordings, Inc. v. Doe</u>, 2008 WL 4104214 at *4 (N.D. Cal., September 3, 2008)[collecting cases], "[i]n Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the Doe defendant, and there is a risk an ISP [i.e., Internet Service Provider] will destroy its logs prior to the conference." Our review of the Plaintiff's Complaint, and its papers in support of its Motion, convinces us that the Plaintiff has satisfied those same criteria here. Without the advantage of Rule 45 Subpoenas, we have more than passing doubt that the identity of the Defendant could feasibly be determined.

While not addressed by the Plaintiff, we understand that our Court of Appeals, in <u>In re Charter Communications, Inc., Subpoena Enforcement Matter</u>, 393 F.3d 771, 778 (8th Cir. 2005), reversed a District Court which had authorized the issuance of Subpoenas that had sought the identity of alleged infringers, but those Subpoenas had been issued under the authority of the Digital Millennium Copyright Act, Title 17

U.S.C. §512(h)("DMCA"), which is not at play here. The Plaintiff's request for expedited discovery is predicated solely upon Rules 26, and 45, Federal Rules of Civil Procedure, and we find no bar to that discovery under the DMCA, which is inapposite to this litigation.

We are also aware that some Courts have analyzed the expedited discovery issues under the First Amendment free speech clause, and the provisions of the Cable Communications Policy Act, Title 47 U.S.C. §551(c)("CCPA"). See, e.g., <u>UMG Recordings, Inc. v. Does 1-4</u>, 2006 WL 1343597 at *2-3 (N.D. Cal., March 6, 2006). Unfortunately, the Plaintiff has not provided us with a copy of the document request, or requests, that it intends to effect upon Homestead, Google, and Tucows, in the form of a Subpoena, and therefore, we are unable to address the prohibitions of the free speech clause, or of the CCPA, in any detail.

While we understand that the Plaintiff seeks to discover the Defendant's identity, his/her/its address, and other identifying information, so as to effect service of process upon him/her/it, the Plaintiff also intends "to determine what, if any, information Defendant Doe may have obtained from Plaintiff's customers in the activities which are the subject of the Complaint." <u>Docket No. 2</u>, at p. 1. The breadth of that intention gives us pause. While we do not understand that the free speech

clause, or the CCPA, to preclude discovery as to the identity of the Defendant, both may impact upon what communications are otherwise discoverable. Certainly, a person is not entitled to engage in trademark infringement, as an exercise of free speech, but we think it premature for the Plaintiff to seek wide ranging discovery on materials which may well implicate the First Amendment, when the Defendant is not represented by legal counsel.

With respect to the CCPA, we have doubt that its provisions apply to Homestead, Google, or Tucows, but our understanding of those entities is limited by the dearth of information provided by the Plaintiff. In any event, even if applicable, the Act does not prohibit the disclosure of identifying information, but has other restrictions upon disclosures. If, for reasons not apparent to us, the CCPA applies, then Homestead, Google, and Tucows, may be obligated to follow the constraints of the Act but, here, we limit the information, which the Plaintiff may seek at this preliminary juncture, to name, address, telephone number, and similar identifiers for the Defendant. If, or when, more expansive discovery is needed, then the Plaintiff can seek that relief after the Plaintiff has had an opportunity to retain legal counsel.

Lastly, we direct the Plaintiff to provide to the Court, forthwith, the language of the discovery requests it seeks to have included in its proposed Subpoenas, in light

of the guidance we have now shed.  The requests should be narrowly tailored to securing the Defendant's identity.  In addition, the information secured shall only be used for the purposes of this litigation, and a copy of this Order shall be served upon each of the referenced entities in conjunction with the Subpoena.  Accordingly, for good cause shown, we grant the Plaintiff's Motion for Expedited Discovery.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiff's Motion for Expedited Discovery [Docket No. 2] is GRANTED, subject to the provisos of this Order.

BY THE COURT:

Dated:  September 2, 2009         *s/Raymond L. Erickson*
                                                                            Raymond L. Erickson
                                                                            CHIEF U.S. MAGISTRATE JUDGE